# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SWISH MARKETING, INC., et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Civil Action No.  09-0921 (JDB)** |
| **FEDERAL TRADE COMMISSION,** | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION</u>

Swish Marketing, Inc. is an internet marketing firm that operates websites which advertise financial services.  The Federal Trade Commission ("FTC") deemed Swish's websites misleading under Section 5(a) of the Federal Trade Commission Act ("FTCA"), and threatened to sue unless Swish agreed to injunctive and monetary relief.  After settlement discussions broke down, Swish, along with two of its officers and directors, brought this action for a declaratory judgment against the FTC.  It asks the Court to resolve whether and to what extent the FTC may seek monetary relief for the alleged violations of the FTCA.  The FTC has moved to dismiss the complaint, urging the Court to decline jurisdiction over Swish's claim.  For the reasons set forth below, the Court grants the FTC's motion.

## <u>BACKGROUND</u>

Swish operates websites marketing short-term, or "payday," loans.  In August 2006, Swish agreed to place on its websites advertisements by Virtualworks, LLC.  Compl. ¶ 7.  Swish also agreed to "transfer to Virtualworks the names and banking information of consumers that expressed interest in purchasing a privacy suite/package that included anonymous web surfing

software combined with an anonymous virtual debit card . . . offered for sale by Virtualworks."
Id. Virtualworks paid Swish an average of $14 for each transfer of information, or "lead," it
accepted. Id.; see also id. ¶ 13. Virtualworks used this financial information to charge
consumers for a prepaid debit card. Def.'s Mot. to Dismiss [Docket Entry 11] ("Def.'s Mot.") at
8.

Between about September 2006 and August 2007, Virtualworks accepted 290,547 leads
from Swish, and based on these leads charged consumers approximately $15.3 million. Compl. ¶
12. Virtualworks instructed Swish in August 2007 to stop transferring leads for certain products,
and it terminated its agreement with Swish the following month. Id. ¶ 11.

In April 2008, the FTC told Swish that it was conducting an investigation "[t]o determine
whether unnamed accessors of consumers' bank accounts are or may be engaged in violation of
Section 5 of the Federal Trade Commission Act . . . by accessing consumers' bank accounts
without consumers' authorization, by accessing consumers' bank accounts for an amount different
than the amount authorized by consumers, or by otherwise obtaining access to consumers' bank
accounts through unfair or deceptive acts or practices." Id. ¶ 14. About a year later, in March
2009, the FTC's Bureau of Consumer Protection concluded that "there is reason to believe" that
Swish's marketing and sale of prepaid debit cards for Virtualworks violated the FTCA. Id. ¶ 16.
The FTC offered to settle the dispute, however, and proposed a stipulated order that would
require Swish to accept a judgment against it for $5,450,367,[1] as well as an injunction governing
Swish's future behavior. Id. The FTC also sent Swish a proposed complaint, which was

---

[1] Of the $15.3 million Virtualworks charged consumers, approximately $9.88 million has
been reimbursed by either Virtualworks or consumers' banks, leaving about $5.4 million of
"consumer loss" remaining. Id. ¶ 12.

captioned to be filed in the Federal District Court for the Northern District of California.  Def.'s

Mot., Exhibit 1.

Swish responded that it would be willing to settle the matter, without admitting liability,

for approximately $1.18 million.[2]  Compl. ¶ 18.  Swish told the FTC that it believed this was the

maximum figure for which it could be held responsible under the FTCA.  Id. ¶ 19.  The FTC

declined Swish's counteroffer, and responded that it believed Swish was liable for the full

amount of consumer harm not yet reimbursed -- $5.4 million.  Id. ¶ 20.  The FTC further

informed Swish that the agency would file its proposed complaint unless the matter was settled

by May 30, 2009.  Id. ¶ 21.

Swish filed a complaint for declaratory relief in this Court on May 18, 2009.  Swish

maintains that it has not violated the FTCA.  Id. ¶ 23; see also Pls.' Opp'n to Def.'s Mot. to

Dismiss ("Pls.' Opp'n") [Docket Entry 13] at 5 n.7.  But Swish asks the Court to determine --

assuming that it did violate the FTCA -- whether section 13(b) of that statute allows the FTC to

obtain any monetary relief from Swish and, if so, the amount Swish may lawfully be required to

pay.  Id. ¶ 24.

Before the Court is the FTC's motion to dismiss Swish's request for a declaratory

judgment.  The agency has not addressed Swish's claims on the merits, but instead urges the

Court to exercise its discretion under the Declaratory Judgment Act and decline jurisdiction over

Swish's complaint.  See Def.'s Reply in Support of its Mot. to Dismiss ("Def.'s Reply") [Docket

Entry 16] at 3.  Meanwhile, after this action was initiated and during briefing on the FTC's

---

[2] This figure apparently represents the money Swish received from Virtualworks for
Virtualworks products that have not been reimbursed to consumers.  Compl. ¶ 13.

motion, a civil enforcement action was brought by the FTC against Swish and others in federal court in California.[3]

## ANALYSIS

The Declaratory Judgment Act provides that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a). This language is permissive, not mandatory: even when a suit otherwise satisfies subject matter jurisdictional prerequisites, the Act gives courts discretion to determine "whether and when to entertain an action." Wilton v. Seven Falls, 515 U.S. 277, 282 (1995); see also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007) (the Act "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants'" (quoting Wilton, 515 U.S. at 286)); Jackson v. Culinary Sch., 59 F.3d 254, 256 (D.C. Cir. 1995).

In deciding whether to exercise its permissive jurisdiction over declaratory actions, a court may consider "equitable, prudential, and policy arguments." MedImmune, 549 U.S. at 136; see also 10B Wright, Miller & Kane, Federal Practice & Procedure § 2759 (3d. ed. 1998) ("It is always the duty of the court to strike a proper balance between the needs of the plaintiff and the

---

[3] The FTC initially contended that the issues underlying Swish's complaint here were not ripe. See Def.'s Mot. at 13-19. The FTC withdrew this argument when, before submitting its reply brief, the agency filed a complaint for violations of the FTCA against Swish in the Northern District of California. Def.'s Reply at 3; see FTC v. Swish Marketing, Inc., No. C09-3814 (N.D. Cal. filed Aug. 18, 2009). According to the docket sheet in that case, a schedule governing the litigation will be set following a December 16, 2009 hearing. See FTC v. Swish, No. C09-3814, [Docket Entries 22, 24].

consequences of giving the desired relief.").  Although there are "no dispositive factors," <u>Comm. on the Judiciary v. Miers</u>, 558 F. Supp. 2d 53, 95 (D.D.C. 2008), the D.C. Circuit has listed several relevant considerations to guide the Court's analysis:

> [W]hether [a declaratory judgment] would finally settle the controversy between the parties; whether other remedies are available or other proceedings pending; the convenience of the parties; the equity of the conduct of the declaratory judgment plaintiff; prevention of "procedural fencing"; the state of the record; the degree of adverseness between the parties; and the public importance of the question to be decided.

<u>Hanes Corp. v. Millard</u>, 531 F.2d 585, 591 n.4 (D.C. Cir. 1976) (citing 10 Wright & Miller, § 2759).  In addition, "[t]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure."  <u>Hanes</u>, 531 F.2d at 592-93.

The parties have largely framed their arguments with reference to the <u>Hanes</u> factors.  The Court will as well.  At the outset, however, it is noteworthy that Swish is not a traditional declaratory judgment plaintiff who brings suit to determine the legality of a "course of action" the plaintiff "wishes to pursue."  <u>Hanes</u>, 531 F.2d at 592.  Swish has already agreed to stop its allegedly unlawful conduct.  Pls.' Opp'n at 35.  Thus, "the plaintiff's liability to the defendant as to future damages if any . . . has now been frozen," so a "prompt and speedy adjudication of [Swish's] rights in order to protect it from acting at its peril or avoiding damages in the future is unnecessary."  <u>Hanes</u>, 531 F.2d at 592 (citation and internal quotation marks omitted); <u>see also</u> <u>AmSouth Bank v. Dale</u>, 386 F.3d 763, 786 (6th Cir. 2004) ("The 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing.").  Hence, "[t]he classic and most persuasive reason for granting a declaration of [rights] is therefore absent from this case."  <u>Hanes</u>, 531 F.2d

at 592.  Accordingly, for Swish to succeed it must show that the <u>Hanes</u> factors overwhelmingly

cut in its favor.  It has not done so.

A.  <u>Whether providing declaratory relief will finally settle the controversy</u>

Courts are mindful that, ordinarily, "it would not be prudent for [them] to expend limited

judicial resources to resolve issues which would not fully resolve the plaintiffs' claims."  <u>Roth v.</u>

<u>D.C. Courts</u>, 160 F. Supp. 2d 104, 110 (D.D.C. 2001).  Thus, "[o]ne of the most important

considerations that may induce a court to deny declaratory relief is that the judgment sought

would not settle the controversy between the parties."  10B Wright & Miller § 2759.

The FTC argues that the Court's resolution of the limited issue before it would not likely

settle the controversy between the parties.  A ruling on the extent of monetary relief available to

the FTC may narrow the parties' dispute but, according to the FTC, it will not resolve whether

Swish broke the law in the first place, nor will it resolve the precise amount for which Swish may

be held liable.  <u>See</u> Def.'s Reply at 12-14.

Swish responds that the Court might conclude that Swish cannot be held liable for

damages under the FTCA at all.  This would resolve the case, as Swish has already agreed to

prospective injunctive relief.  <u>See</u> Pls.' Opp'n at 35.  The Court might also rule that Swish may

only be held liable for money it received that is traceable to consumers who have not been

reimbursed.  This would similarly resolve the matter, as Swish has offered to settle with the FTC

for that amount (approximately $1.18 million).  <u>See id.</u>  It may even be more efficient for this

Court to reach the issue in advance of a liability determination.  <u>See</u> Pls.' Surreply [Docket Entry

18] at 5-6.

The Court cannot assume, however, that it will resolve the merits of Swish's complaint in

6

the company's favor.  If the Court rules that the FTC may seek monetary relief from Swish up to the full amount of consumer loss, then continued litigation would seem almost inevitable, as Swish insists that it has not violated the FTCA.  See Pls.' Opp'n at 5 n.7; Compl. ¶ 23.

Swish correctly points out that "[a] declaratory action need not be dismissed because it could not settle all possible differences between the parties."  10B Wright & Miller § 2759; see also Pls.' Opp'n at 35-36.  But "[i]n the discretionary balance which this court holds, avoidance of piecemeal litigation weighs in favor of dismissal."  Gov't Employees Ins. Co.v. Rivas, 573 F. Supp. 2d 12, 15 (D.D.C. 2008); cf. Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011, 1020 (D.C. Cir. 1991) ("Where it is uncertain that declaratory relief will benefit the party alleging injury, the court will normally refrain from exercising its equitable powers.").[4]

Even if the Court provides the requested declaratory relief, the controversy between the parties is likely to continue, resulting in substantial inefficiencies for both the parties and the judicial system.[5]  This factor, then, cuts against the exercise of jurisdiction.

B. Prevention of "procedural fencing"

Another important consideration is whether Swish is engaged in "procedural fencing," or forum-shopping.  "The Declaratory Judgment Act is not a tactical device."  Rivas, 573 F. Supp.

---

[4] A declaration of the remedies available to the FTC under the FTCA on the current record would border dangerously on an advisory opinion.  If Swish is ultimately found not liable, this Court's resolution of the remedy issue will have had no effect on the legal relationship between the parties.

[5] Swish contends that the FTC is responsible for any inefficiencies that may result from having concurrent proceedings, as the agency chose to file suit against Swish while this action was proceeding.  Not so.  The natural plaintiff has the "right to choose its forum," BASF Corp. v. Symington, 50 F.3d 555, 559 (8th Cir. 1995), and the Court will not hold it against the FTC that the agency lost the "race to the courthouse."

2d at 15.  Thus, in examining whether to resolve a declaratory judgment action, "[c]ourts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum."  <u>AmSouth</u>, 386 F.3d at 788; <u>see also</u> 10B Wright & Miller § 2759 ("The courts properly decline relief if the declaratory-judgment procedure, and the federal forum, is being used for 'procedural fencing' or 'in a race for res judicata.'").

The FTC argues that Swish's filing of this action mere weeks before the agency's "deadline" to settle the case is a transparent attempt to evade suit by the natural plaintiff to this litigation in an unfavorable forum.  Def.'s Mot. at 21.  Were this issue resolved under Ninth Circuit law, as the FTC intended, Swish could have been forced to pay the full amount of remaining consumer loss -- $5.4 million.  <u>See</u> <u>Stefanchik</u>, 559 F.3d at 932 ("[C]ourts have often awarded the full amount lost by consumers rather than limiting damages to a defendant's profits.").  The D.C. Circuit, on the other hand, has not addressed the issue.

Swish disputes these accusations, primarily arguing that Washington, D.C. is the FTC's "home district" and the location "where the policies [Swish is] challenging have been established and are administered."  Pls.' Opp'n at 29.  This Court, it says, is therefore a perfectly appropriate forum in which to resolve this action.

But "whether the forum chosen by the declaratory plaintiff is 'logical' can have only a minimal value in determining whether procedural fencing has occurred.  The question is not which party has chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first."  <u>AmSouth</u>, 386 F.3d at 763 (footnote omitted).

Here, the evidence strongly suggests that Swish has done just that.  By the end of April,

the FTC had informed the company that "unless [Swish] will resolve this matter on or before

May 30, 2009 . . . the FTC will proceed with filing a civil action against [Swish] in federal

court."  Compl. ¶ 21.  The agency also sent Swish a proposed complaint, which was captioned to

be filed in the Federal District Court for the Northern District of California.  Def.'s Mot., Exhibit

1.  By the time it filed suit on May 18, 2009, then, Swish had every reason to believe that within

weeks the FTC would file its own enforcement action in the Ninth Circuit.  The Court sees no

apparent reason for Swish to have filed this declaratory judgment action before that May 30

deadline except to avoid the FTC's unfavorable (to Swish) choice of forum.  It strains credulity

for Swish to contend otherwise.

     "'[W]here a putative defendant files a declaratory action whose only purpose is to defeat

liability in a subsequent coercive suit, no real value is served by the declaratory judgment except

to guarantee to the declaratory plaintiff her choice of forum -- a guarantee that cannot be given

consonant with the policy underlying the Declaratory Judgment Act.'"  Rivas, 573 F. Supp. 2d at

15 (quoting AmSouth, 386 F.3d at 788).  Such considerations weigh heavily in the Court's

calculus, and this factor strongly counsels against exercising jurisdiction here.

C. Anticipatory defense

     A third factor governing the Court's analysis is whether Swish is asking the Court to

adjudicate an anticipatory defense.  "The anticipation of defenses is not ordinarily a proper use of

the declaratory judgment procedure," as "[i]t deprives the plaintiff of his traditional choice of

forum and timing, and it provokes a disorderly race to the courthouse."  Hanes, 531 F.2d at 592-

93.  Accordingly, "numerous courts have refused to grant declaratory relief to a party who has

come to court only to assert an anticipatory defense."  Veoh Networks, Inc. v. UMG Recordings,

Inc., 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007) (citing cases).

Swish does not dispute that courts are ordinarily disinclined to use declaratory judgments to resolve anticipated defenses.  Instead, it points out that where declaratory relief would serve "useful purposes," courts may still choose to entertain such actions.  Pls.' Opp'n at 32.

True enough, but that misses the point.  Courts certainly may entertain declaratory actions that involve anticipatory defenses.  But, in the balancing test governing the Court's discretion, the fact that granting declaratory relief would require the resolution of an anticipatory defense weighs against exercising jurisdiction.  See BASF Corp., 50 F.3d at 559 ("It is our view that where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue.").

Swish also contends that the question presented to this Court -- the FTC's authority to seek monetary relief in an enforcement action under the FTCA -- is not an affirmative defense at all: at trial it is the FTC that would bear the burden of establishing its authority to seek monetary relief.  Pls.' Opp'n at 32-33.  But wherever the burden of proof on this question lies, Swish's argument as to the FTC's authority to obtain certain monetary relief is best thought of as a remedial defense.  A defense is "a reason why the plaintiff should not recover or establish that which he seeks by his complaint," BLACK'S LAW DICTIONARY (8th ed. 2004) (quotation omitted), and that is exactly what Swish is asserting here.  The issue before the Court is thus properly considered an anticipatory defense, and this factor further counsels against the exercise of the Court's jurisdiction.

D. Additional factors

10

The Court has also considered other <u>Hanes</u> factors in its analysis.

**State of the record:** Both this case and the parallel proceedings in the Northern District of California are pre-discovery and Swish's claims have not been briefed on the merits in either action.  Although the FTC has filed a motion to dismiss in this case, and Swish has not yet filed an answer in the other federal proceeding, Swish will not be significantly prejudiced by any delay arising from this Court's decision not to exercise jurisdiction.

**Other proceedings pending:** Swish will be able to raise in the Northern District of California the same arguments it has pursued in this action.  "Where a pending coercive action, filed by the natural plaintiff, would encompass all the issues in the declaratory judgment action, the policy reasons underlying the creation of the extraordinary remedy of declaratory judgment are not present, and the use of that remedy is unjustified." <u>AmSouth</u>, 386 F.3d at 787.  Such is the case here.

**Convenience of the parties:** Both parties agree that this dispute could be resolved on summary judgment, so concerns about the difficulty of producing witnesses and evidence are absent.  The Court finds that this factor therefore does not favor either side.

**Adverseness of the parties:** The FTC has sued Swish in federal court, so the parties' interests are in direct conflict.  Though of minimal relevance in this case, this factor weighs in favor of the exercise of discretion.

**The issue is of public importance:** The FTC does not dispute that the remedies available to the FTC in enforcing the FTCA are of public importance.  This factor, then, also provides some support for retaining jurisdiction here.

11

**<u>CONCLUSION</u>**

The Court declines to exercise its discretionary declaratory judgment jurisdiction in this case.  The traditional <u>Hanes</u> factors overwhelmingly cut against awarding declaratory relief.  And Swish is not the classic declaratory judgment plaintiff who seeks to clarify the legality of its future actions.  The Court accordingly grants FTC's motion to dismiss Swish's complaint.  A separate order accompanies this memorandum opinion.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated: <u>November 17, 2009</u>